## REID v. WELLS.

1. DEBTOR AND CREDITOR—PAYMENTS.—When a debtor directs a payment to be credited on one of two accounts or debts, the payment is regarded in law as made as directed, no matter to what account or debt the creditor has placed it.

2. IBID.—IBID.—BURDEN OF PROOF.—When a creditor claims that he has credited his debtor's payment on an account other than one sued on, it is incumbent on him to prove both debts, and application of all payments.

3. EVIDENCE.—A MERCHANT'S ACCOUNT cannot be proved by loose declarations of himself and clerks, that defendant owed him a considerable account, or by the fact that cotton bills read, "Cr. on Acct.," of which defendant has sought no explanation, nor by statement of defendant that he had a good man to take up the papers, when there existed another debt which defendant acknowledged, and of which he had failed to get a statement of plaintiff.

4. REHEARING refused.

Before TOWNSEND, J., Newberry, March, 1899. Affirmed.

Foreclosure by George T. Reid against Mary F. Wells. The Circuit decree is as follows:

This case was commenced by service of summons and complaint on the 21st of September, 1898. The complaint is in the usual form for the foreclosure of a mortgage, claiming judgment against the defendant for $1,060.35, and interest from the 22d January, 1887, at ten per cent. per annum. The defendant answered, admitting execution of a note and mortgage sued on, and setting up payment and a counterclaim by way of overpayment to the amount of $1,687.32, and demanding judgment therefor. The case was marked "submitted" at the November term of Court, and an order of reference taken. Pursuant to this order the reference was held on the 15th December, 1898. On the 31st December, 1898, the master filed his report in favor of the plaintiff, allowing the defendant a small credit. On 9th January, 1899, the defendant served the following exceptions:

1st. That the master erred in not giving his conclusions of law and findings of facts separately.

2d. That the master erred in not making any finding of fact and conclusions of law at all.

3d. That the master erred in not finding that the payment made on the note and mortgage cancelled and discharged the

same, and overpaid it by a large sum, for the amount of which overpayment judgment should have been recommended for the defendant.

4th. That the master erred in holding that the plaintiff could reply to the defendant's testimony given at the trial to establish her counter-claim, the plaintiff not having replied to defendant's answer in which said counter-claim was set up, and for which judgment was asked in her behalf.

5th. That the master erred in allowing the plaintiff and two of his witnesses, Scurry and Irwin, to give on the trial irrelevant and secondary evidence.

6th. That the master erred in allowing the plaintiff and his witnesses to testify to transactions, the highest and best evidence of which was in writing and in the plaintiff's possession.

7th. That said report was contrary to law and the overwhelming weight of the evidence.

I overrule the first exception, because the provision in the Code, stating conclusions of law and of fact separately, is directory and not mandatory. I overrule the fourth exception, because the alleged counter-claim was not pleaded as a counter-claim. I overrule the second exception, because counsel misapprehended the master as to his findings. I overrule the fifth and sixth exceptions, because the books of plaintiff, though important and likely to afford much more full and accurate testimony, are no higher character of evidence than his own testimony or the testimony of his witnesses. I overrule so much of the third exception as relates to the alleged counter-claim, but I sustain the remainder thereof, and also the seventh exception; because I am convinced by the testimony that the note and mortgage have been overpaid by a large amount. The proof is overwhelming that the plaintiff received money or cotton, or both, sufficiently to largely overpay said debt; and it appears that he would create the belief that it was applied to an amount held by him against the defendant; but he fails to produce the account. He was a merchant, and kept books. These

books must contain the entire transactions between plaintiff and defendant, and a mere glance at them would explain the whole matter; but he fails to produce them, and does not explain why he does not produce them. The law favors a merchant in this respect. It allows him to prove the account by his books, and surely if Mr. Reid had books and accounts which absorbed so much of defendant's money as he claims, he should by all means have produced the books. Of course, he could prove his account without the books if he chose to do so and could do so, because the books afforded no higher evidence than his own oath; but the books would show everything at a glance, and leave nothing to memory, and of course, would for these reasons alone, if nothing else, be far more satisfactory. Instead of producing his books, or even so much as a copy of the alleged account, he merely refers to the account as a "considerable" account, and his witness, a former book-keeper, refers to the account as a "considerable" one; and another witness for plaintiff says it was "a large account for a small farmer." This is not the kind of testimony the Courts expect from those who have it in their power to explain matters that are undergoing investigation, and involving large amounts of money or property. The pleas of payment in the answer made it incumbent on the plaintiff to account for the proceeds of the defendant's crops, and his failure to aid the accounting by producing testimony so convenient as his books, and which were more likely to be correct than human memory, leads to the inevitable conclusion that he could not do it, and that it must have been against him.

It is, therefore, ordered, adjudged and decreed, that the note and mortgage sued on in this action was paid, satisfied and discharged before this action was commenced.

It is further ordered, that the complaint be dismissed with costs.

From this judgment plaintiff appeals.

*Messrs. Johnstone & Welch,* for appellant, cite: *Debtor*

*may direct on which debt payment shall be placed:* Bail. Eq., 380, 430; 2 McC., 293; 9 S. C., 439; 20 S. C., 34; 23 S. C., 354; 29 S. C., 429; 42 S. C., 104.

*Mr. F. P. McGowan,* also for appellant, cites: *Defendant is estopped now from opening former settlement as to sale of the land:* 19 S. C., 560; 2 S. C., 106; 2 Strob. Eq., 148. *Burden of proof rests on party contesting account:* 4 Paige, 481; 4 Crouch, 306. *Execution of bond and mortgage raises presumption of liquidation of all previous accounts:* 2 McC. Ch., 11. *If debtor does not direct, creditor may apply payments:* Bail. Eq., 334; 20 S. C., 46; 2 Rich. Eq., 66; 26 S. C., 155. *Statement or receipt may show application:* 12 Pa. St., 238; 30 La. Ann., pt. 2, 1225. *Burden on defendant to establish overpayment:* 26 S. C., 159; 20 S. C., 534.

*Mr. O. L. Schumpert,* contra, cites: *A counter-claim is properly pleaded when it sets up a cause of action and prays for judgment:* 10 S. C., 185; 16 S. C., 586; 20 S. C., 521; 30 S. C., 115.

This opinion was filed on December 2, 1899, but remittitur held up on petition for rehearing until

January 24, 1900. The opinion of the Court was delivered by

MR. CHIEF JUSTICE McIVER. The plaintiff commenced this action on the 21st of September, 1898, to foreclose a mortgage on real estate to secure the payment of a note under seal given by the defendant to the plaintiff, on the 22d of January, 1887, for the sum of $1,060.35, payable one day after date, with interest from date at the rate of ten per cent. per annum. The case was heard by his Honor, Judge Townsend, upon the pleadings, the testimony, which is set out in the "Case," the report of the master and the exceptions thereto, and on the 16th of March, 1899, he rendered his decree (a copy of which should be incorporated in the

report of this case), in which he found that the note and mortgage had been paid and satisfied before the commencement of this action, and he, therefore, adjudged that the complaint be dismissed with costs. From this judgment plaintiff appeals, basing his appeal upon the sixteen exceptions set out in the record.

The undisputed fact is that the note and mortgage were given to secure the payment of the purchase money of a tract of land covered by the mortgage, which was conveyed to the defendant by the plaintiff at the date of said mortgage. The defendant, however, contended and offered testimony tending to show that she went into possession of the said land about the first of the year 1884, under a contract to purchase the same from the plaintiff, made in the latter part of the year 1883, and made sundry payments on the land by the delivery of cotton, which she made from year to year, to the plaintiff. This contention is denied by the plaintiff, and as there was no finding of fact, either by the master or the Circuit Judge, that question is not before us. The undisputed fact, however, is that the defendant sent to the plaintiff sundry lots of cotton—all that was made from 1883 to 1887, as the defendant testifies—and the proceeds of such cotton appear, from the cotton bills introduced in evidence, to have been "credited on account," though portions thereof appear to have been paid in cash. The defendant also testified that she continued to send him (Reid) all the cotton from 1887 to 1897, and this is corroborated by the cotton bills offered in evidence, and the defendant also says that she "Told Mr. Reid the cotton was to go upon the land." The defendant's husband, who seems to have been her agent in delivering the cotton, also testified that: "Along at the first—the first two or three years"—he directed that the proceeds of the cotton should be credited on the note; and says: "In 1888, I told him to put it upon the land"—which last testimony is corroborated by the plaintiff's book-keeper, Scurry, who testified that "only this one time" was he directed to credit the cotton on the note and

mortgage; and the cotton bill of the 30th and 31st of January, 1888, the net proceeds of which was $181.46, is credited as follows: "Cr. Acct. & Mortg & note." It is claimed that the plaintiff denied that he had ever been instructed to credit the proceeds of the cotton on the note and mortgage. Let us see; the plaintiff having testified that Wells had an account with him, was asked: "Q. Did he ever instruct you to place his cotton sales to his credit on the note and mortgage?" and before answering that question he was asked another: "What did you do with them? A. I placed them to his account. If he had come in with a bale of cotton and said this must go on that note and mortgage, I would then have said that this note and mortgage must be paid. I, of course, would not let him run this open account, and me pay (credit)? this payment on the note and mortgage." It will thus be seen that he never did answer the first question—whether he had ever been instructed to credit the cotton on the mortgage, but confined his answer to the second question, simply saying what he had done—placed the proceeds of the cotton to the account—and then proceeded to say what he would have done, if Wells had demanded that the proceeds of the cotton be credited on the note and mortgage. But both Scurry and Irvin, who at different times have been plaintiff's book-keepers, testified that they had never been instructed to credit the proceeds of the cotton on the note and mortgage, except in the single instance of the cotton delivered on the 30th and 31st of January, 1888, when Scurry admits that he was so instructed. After this brief statement of such portions of the testimony as seems to us material to a proper understanding of the controversy, we will proceed to consider the questions, or rather question—for there is substantially but a single question presented by this appeal—which is stated by counsel for appellant as follows: Whether the Circuit Judge "erred in holding that the proceeds of the cotton sales were applied, or should have been applied, upon the note, and that it, therefore, was paid,

cancelled and discharged before the commencement of this action."

The rule is too well settled to need the citation of authority to support it, that where a person owes two debts to another, and makes a payment to the creditor, the debtor has a right to direct the application of such payment, provided such direction is given before or at the time of making such payment; but if no direction is thus given, then the creditor may apply such payment to either of the two debts as he may see fit. Under this rule, therefore, if it be true, as Mrs. Wells says, that she sent the plaintiff all the cotton she made from 1887 to 1897, and told him that "the cotton was to go on the land"—which, of course, meant the note and mortgage given to secure the payment of the purchase money of the land—then the proceeds of such cotton must be regarded, in the eye of the law, as applied to the note and mortgage, even though such proceeds were, in fact, applied to another debt which the plaintiff claimed to hold against the defendant. If this view be adopted, then it is clear that there was no error in the conclusion of the Circuit Judge.

But there is another view under which the judgment below must be sustained. Under the terms of the rule, it must appear that the defendant owed *two* debts to the plaintiff; and we agree with the Circuit Judge in holding that the plaintiff utterly failed to show that the defendant owed him anything by open account. Hence, even if the defendant never gave the plaintiff any directions as to the application of the proceeds of her cotton, such proceeds must necessarily be applied to the only debt which has been shown to be due by the defendant to the plaintiff, to wit: the debt secured by the note and mortgage. It is contended, however, by the apellant that this alleged account was sufficiently proved by the testimony in this case. Let us see. It certainly was not proved in the usual mode resorted to by merchants, by introducing the books of the plaintiff, who was a merchant, for his books were not offered

in evidence, and the testimony furnishes no explanation of the reason why they were not introduced; and we will not speculate as to what was the reason. It is idle to suggest, as has been done in the argument, that the books may not have contained this alleged account, and may not have shown this transaction, in view of the testimony of the plaintiff himself, that, when defendant called upon him to know how this matter stood, he put her off by saying that his book-keeper was not in, and of the testimony of his witness, Scurry, who had been his book-keeper, that he could not tell how much of the $181.46 should have been credited on the note and mortgage, unless he "could see the books." Which conclusively shows that the books did contain the account, and that even the plaintiff himself could not tell how he stood with defendant except by reference to his books; and yet he asks the Court to say, without the production of his books, what he testifies he could not say without reference to his books. It is true, as said by the Circuit Judge, that a merchant may prove an account without the production of his books—for example, by his own testimony or that of his clerks that they knew, of their own knowledge, that the articles charged in the account were sold and delivered at the prices charged on the account, or by the admission of the party against whom the account is claimed, that it is correct. It is very certain that the alleged account was not proved in the mode which has just been first suggested, for surely it cannot be claimed that the loose testimony of the plaintiff and his two witnesses, Scurry and Irvin, that there was an account, the amount of which was "considerable," to use the expression of one of the witnesses, or was "a pretty good account for a small farmer," to use the language of another witness, amounts to anything. But the appellant relies upon the other mode of proof, to wit: the admission of the defendant. It is not, and cannot be, pretended that there was any direct testimony that the defendant ever admitted the alleged account, or indeed that she owed the plaintiff anything at all, except on account of the

note and mortgage; indeed, there is no testimony that a copy of the alleged account, or any statement of the amount claimed to be due thereon, was ever presented to or otherwise made known to the defendant. Indeed, it would be impossible for the defendant or any one else to ascertain, from anything in the "Case," where the testimony is fully set out, what was the amount of the alleged account, or what was a single item, or what was the price of a single article charged therein. It would, therefore, be worse than idle to claim that the defendant ever directly admitted the correctness of the alleged account. We do not understand, however, that the counsel for appellant makes any such claim, but his contention is that such admission should be inferred from certain entries made on the cotton bills furnished to the defendant, and kept by her without inquiry or complaint. It appears that the defendant sent all her cotton made from year to year, between the years 1887 and 1897, to the plaintiff, and that as the several lots of cotton were delivered, cotton bills were furnished defendant, showing the amount of the sale, and the net balance, after deducting the charge for weighing and certain small cash payments. These net balances were, in most instances, entered on the cotton bills as "Cr. to Acct." From this it is argued that the necessary inference is that the defendant knew that she owed an open account to the plaintiff, and recognized the correctness of the same, at least, to the extent of the amount of such credits. This argument would be entitled to weight, if there were nothing else in the case. But there is something else, which, it seems to us, deprives the argument of the force it would otherwise have. The undisputed testimony is that the defendant and her husband were very illiterate persons, having little experience in business; that neither the defendant nor her husband ever knew until within a year—in fact, a very few months before this action was commenced—that the proceeds of her cotton had not been credited upon the note and mortgage (after which information no more cotton was delivered to plaintiff), and supposed all the time that the

cotton had all been credited on the note and mortgage, as she testifies she had originally directed the plaintiff to do. These abbreviated entries made on the cotton bills furnished defendant would not, under all the circumstances, in our judgment, be sufficient to justify the inference which plaintiff seeks to draw from them. It is doubtful, to say the least of it, whether these ignorant old people, scarcely able to read or write, could decipher these abbreviated entries; and if they did, they would very naturally suppose that the proceeds of the cotton had been credited on the only debt—the note and mortgage of which there is any satisfactory evidence was due the plaintiff. Besides, it seems to us almost incredible that these old people, who, according to the undisputed testimony, lived very plainly and economically, raising all their own supplies, except such articles as sugar, coffee and salt, and sometimes selling corn, fodder and meat, could possibly have contracted accounts with the plaintiff to an amount sufficient to absorb the entire proceeds of the cotton, amounting, between January, 1887, and January, 1898, to something over $2,600, as shown by the cotton bills introduced and other lots of cotton proved by Wells to have been delivered to plaintiff in February and March, 1897, for which cotton bills were not offered in evidence because lost. The suggestion thrown out in the argument in reply, that these large alleged accounts were due to the employment of negro labor, the expenses of which "often eats up the white man's profits," rests entirely upon pure conjecture, for there is not a particle of testimony—not even a hint—tending to show that the defendant ever employed negroes or any other hired labor, to make or assist in making her crops. The reference made to the fact that the defendant, while making unsuccessful attempts to obtain from the plaintiff a statement as to how she stood with him, said: "I told him I had a good man in view I could get to take up the papers," for the purpose of showing that the defendant then knew that there was then a large amount due on the note and mortgage, does not strike us as amounting to anything. According to defend-

ant's testimony, she never found out that no credits had been put upon the note and mortgage until some time in June, 1898—only a very few months before she was sued. She then made repeated attempts to obtain from the plaintiff a statement of how they stood, without success, during the course of which she made the statement above quoted. She knew that she had given the plaintiff a note for an amount, which, no doubt, seemed to her to be very large, and that it had been running for upwards of ten years at a high rate of interest, and although she knew that she had made numerous payments which should have been credited on the note, it would be very unreasonable to suppose that this illiterate old woman would have been able to make the calculation and find out whether there was any balance, and if so how much still due; and her statement that she had in view a *"good"* man to take up the papers, does not by any means imply that the amount due was *large,* for the person who was expected to take up the papers would have to be "good" for the amount due—whether large or small. Under no view that we have been able to take of this case can the appeal be sustained.

The judgment of this Court is that the judgment of the Circuit Court be affirmed.

Petition for rehearing was filed December 12, 1899. On January 24, 1900, the Court refused the petition and ordered the remittitur down.