DAVIS METER AND SUPPLY COM-
PANY, Inc., Plaintiff,

v.

COASTAL WATER COMPANY, a corpo-
ration, Coastal Utility Company, a cor-
poration, L. C. White and S. E. Felkel,
Defendants.

Civ. A. No. 66–731.

United States District Court
D. South Carolina,
Charleston Division.

April 20, 1967.

A. Barron Holmes, III, Charleston,
S. C., for plaintiff.

Charles S. Goldberg, Charleston, S. C.,
for defendants.

HEMPHILL, District Judge.

This is an action on a note given by
Coastal Water Company and the other
defendants to Davis Meter and Supply
Company, Incorporated. The answer
raises the defense that there was a sub-
sequent oral agreement between the par-
ties, that payments were made under the
new agreement, and that the note had
effectively been rescinded and aban-
doned. The matter was heard by the
court without a jury, therefore the facts
shall be found specially and the conclu-
sions of law stated separately.

On June 21, 1966, the defendants
Coastal Water Company by L. C. White,
president, S. E. Felkel, secretary, and
Coastal Utility Company by S. E. Felkel,
president, L. C. White, secretary, and
S. E. Felkel and L. C. White, individu-
ally, executed a promissory note for value
received promising to pay to the order
of Davis Meter and Supply Company, Inc.
the sum of $17,662.61 with interest
from that date at 6% per annum, princi-
pal and interest payable on or before
September 15, 1966, provided that in the
event the makers procured a loan on or
before September 15, 1966, that the note
would be paid from the proceeds of the
new loan on the date the new loan was

made. The note further provided for collection costs and an additional 10% of the amount due for attorney's fees. The makers were jointly and severally liable for the payment of the principal and interest notwithstanding any extensions of time or any changes in the amount or amounts agreed to be paid under the note or any changes by way of release or surrender of any collateral held as security for the note. Notice of extensions, or changes were waived and it was agreed that they could be made without the joinder of the principals.

Davis Meter and Supply Company supplies equipment to Coastal Water Company and Coastal Utility Company. This note was drawn to consolidate and cover debts owed by the defendants to the plaintiff for purchases. The defendants' version, which is denied, of what happened after the note was given is as follows. In August or September of 1966, before the note matured, Mr. Felkel telephoned the credit department of the Davis Company and requested that they forego their right to declare the balance of the note due on the 15th of September, and that he agreed to pay the amount due in monthly installments of a minimum of $1000 with interest at 7% to be added to the final payment.

Acting on the agreement, says Felkel, he sent four post dated checks to the defendant in October. One check was for $1500 and three were for $1000. The checks were passed at the time however and they were honored. On October 31, 1966 this action was started. The defendants maintain that these checks paid up their new agreement through January of 1967. Since the suit was filed they have not paid any more on the advice of counsel.

There remains a $937.22 credit balance in an account of the defendants at the Davis Company which is guaranteed by a third party for material to be used on a certain project. This money and the checks should have been applied to the note, it is argued, but they were not, and the money is being held for payment on future orders.

Two questions are presented. Has there been a novation? If there has not, should the moneys held by Davis Company have been applied on the note?

The defendant bases the allegation on his alleged telephone conversation with the Davis Company. He readily admits, however, that he does not know with whom he talked in this conversation which involved the disposition of a note for thousands of dollars.

Controverting Felkel's story, the credit manager, Larry May, testified that he did not know anything about such an agreement: he necessarily would know of any arrangement like that, if one in fact had been made, because he was the person responsible for those matters. There were affidavits from other Davis Company personnel to the effect that no one could corroborate Felkel's alleged agreement.

Payment of the four checks is said to be circumstantial evidence supporting the existence of the agreement. However, that evidence is susceptible of many inferences including the possibility that the checks were meant as partial payment on the original note. For the same reason, it cannot be said that the plaintiff's acceptance of the checks would amount to a ratification of the purported agreement.

■ From this conflicting testimony it is the finding of the court that no such agreement was made. The defendant submits that his broad business activities of long standing would make it probable that the plaintiff would have made such an agreement with him as an accommodation. That same business experience raises serious doubts whether it is likely that Felkel would make a contract involving $17000 over the telephone with a person not known to him by name or in any other way, and yet not take the precaution of documenting the transaction.

It is stipulated that there is no question involving the Statute of Frauds.

Having found that the defendants failed to prove a novation, it is necessary

to resolve the dispute over the amount now due and recoverable under the note.

The four checks aggregating $4500 which were forwarded after the note had matured and a credit balance remaining in an account should have been, the defendants argue, applied to the balance of the note. The checks were not applied to the note but to various accounts. The Tranquil Acres project account was not guaranteed by a third party and was placed in the regular account. That account had been reduced from a balance due of $2606.44 to $6.44 by a check from Tranquil Acres. Other orders amounting to $1470.01 were placed by the defendants and received. The four checks were applied to this account, and with the credit to this account the credit balance became $3023.55. This amount is now carried in favor of the defendants as an advance against future orders. The company notified the defendants at some point that all future sales would be C.O.D. or paid in advance or guaranteed by a third party.

There also remains a credit balance of $937.22 in the Bushy Park Terrace account which is guaranteed by a third party, the Cooper River Federal Savings & Loan Association.

■■ Ordinarily when a debtor owes money on several accounts and makes payment of less than the total amount due, he may specify to which debt the payment is to be applied. The creditor must apply the money to the account directed. 6 Williston, Contracts § 1795 at 5105 (revised ed. 1938). If he does not specify which debt the creditor may apply the money to any debt which is due. Id. § 1796 at 5108 and cases cited in n. 2. Accord, Restatement, Contracts § 387(b). But the creditor cannot apply the payment to a debt not matured if other debts to which payment might be applied are due, 6 Williston, Contracts section 1797 at 5111 (rev. ed. 1938) and cases cited n. 8 ("A payment cannot be appropriated to advances not then made. Petroutsa v. Schrader Co., 76 Fla. 574, 80 S. 486").

■ The terms of the rule presuppose that the defendant owed two debts to the plaintiff. Reid v. Wells, 56 S.C. 435, 34 S.E. 401 (1900) (it is incumbent on the plaintiff to prove both debts, and the application of all payments). The creditor is also generally prohibited from applying the payments to debts which have not matured at the time of receipt. Restatement, Contracts § 389(a) (1932). See F. H. McGraw & Co. v. Milcor Steel Co., 149 F.2d 301 (2nd Cir. 1945) and authorities cited at 306. That prohibition is intended primarily for the debtor's protection, and where there has been an assent by the debtor to another arrangement, it would not operate. F. H. McGraw & Co., supra. However, in this case, there is no proof of any weight that there was any agreement or assent.

There was in this case, of course, no direction to apply the checks against the note because the defendant has plead, but failed to prove, a novation. It was then permissible for the plaintiff to apply the checks to any accounts in his interest that represented matured debts. It could have been applied to other accounts only with the assent of the debtor. The only matured debt other than the note in regular and unguaranteed accounts at the time the checks were forwarded was $6.44 for the Tranquil Acres project and $1470.01 for other orders.

The credit balance held in the Bushy Park job account was a fund held for a specific job and guaranteed by a third party, and it was not available for application to the general debts of the defendants.

■ It has never been contended that $3023.55 remaining from the payment of the four checks was not available to the defendants: it is held out as a credit to them. While the plaintiff held a mature note, it was not entitled to apply the remaining $3023.55 to another account as an advance against future purchases, and to that extent the payments must be regarded as being applied to the note and a discharge pro tanto.

It is ordered therefore that the plaintiff have judgment on the note in the

amount of $17,662.61 together with interest and attorney's fees and the costs of the action, subject to and adjusted for the part payments and pro tanto discharge of the $3023.55 balance now held by the plaintiff.

And it is so ordered.